**ROBERT L. McNEIL, JR. TRUST for Nancy M. McNEIL, et al., Petitioner**

v.

**COMMONWEALTH of Pennsylvania, Respondent**

**Levine R L JRV MCN Levine, a/k/a Robert L. McNeil, Jr. Trust for Mary Victoria McNeil, et al., Petitioners**

v.

**Commonwealth of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 13, 2013.
Decided May 24, 2013.

---

Joseph Lipari and Mark E. Wilensky, New York, NY, and Stewart M. Weintraub, West Conshohocken, for petitioners.

Kevin A. Moury, Senior Deputy Attorney General, Harrisburg, for respondent.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BROBSON, Judge.

OPINION BY Judge COHN JUBELIRER.

In 2007, the Department of Revenue (Department) assessed Pennsylvania In-

come Tax (PIT) and interest on all of the income of two inter vivos trusts, which are located in, administered in, and governed by the laws of Delaware and which had no Pennsylvania income or assets in 2007. The Department imposed the PIT because the trusts' settlor, Robert L. McNeil, Jr. (Settlor), resided in Pennsylvania when he established the trusts in 1959 and the trusts' discretionary beneficiaries are Pennsylvania residents. On appeal, the Robert L. McNeil, Jr. Trust for Nancy M. McNeil (NMM Trust) and the Levine R L JRV MCN Levine, a/k/a Robert L. McNeil, Jr. Trust for Mary Victoria McNeil (MVM Trust) (collectively, the Trusts), argue that this tax is contrary to the Department's interpretation of the Tax Reform Code of 1971[1] (Tax Code) and violates the Uniformity Clause of the Pennsylvania Constitution[2] and/or the Commerce,[3] Due Process,[4] and Equal Protection[5] Clauses of the United States (U.S.) Constitution. Because we conclude that the imposition of PIT here violates the Commerce Clause of the U.S. Constitution, we reverse.

## I. Factual History

The parties stipulated to the following facts. On January 2, 1959, Settlor, a Pennsylvania resident, executed the Trusts' Agreements and, by January 3, 1959, all of the Trusts' trustees had executed those Agreements. (Stipulation of Facts (Stip.) ¶¶ 14–16, 51–53.) The Trusts' Agreements provide that the Trusts are Delaware trusts that are to be governed, administered, and construed under the laws of Delaware, (Stip.¶¶ 17, 54), and named the Wilmington Trust Company (WTC), located in Wilmington, Delaware, as the sole administrative trustee; WTC was the administrative trustee in 2007 (Stip. ¶¶ 19–21, 56–57; NMM Trust Agreement at 4; MVM Trust Agreement at 4). WTC had no offices, conducted no trust affairs, and did not act as administrative trustee for the Trusts in Pennsylvania in 2007. (Stip.¶¶ 23–24, 58.) All of the Trusts' books and records are maintained in WTC's Wilmington, Delaware office. (Stip.¶ 22.) In 2007, the Trusts' three general trustees resided outside of Pennsylvania and did not conduct trust affairs or act as general trustees for the Trusts in Pennsylvania. (Stip.¶¶ 25–30, 59–60.)

None of the Trusts' assets or interests in 2007 were located in Pennsylvania, and the Trusts had no income from Pennsylvania sources. (Stip.¶¶ 31–34, 39–40, 61–65, 70–71.) All of the Trust's discretionary beneficiaries[6] were residents of Pennsyl-

1. Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 7101–8297.

2. Article VIII, Section 1 of the Pennsylvania Constitution provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pa. Const. art. VIII, § 1.

3. Article I, Section 8, Clause 3 of the U.S. Constitution provides that "The Congress shall have Power ... [t]o regulate Commerce ... among the several States." U.S. Const. art. I, § 8, cl. 3.

4. The Fourteenth Amendment to the U.S. Constitution states: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law ...." U.S. Const. amend. XIV.

5. The Fourteenth Amendment of the U.S. Constitution also provides that "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

6. The NMM Trust's discretionary beneficiaries were Settlor's wife, Nancy M. McNeil, and certain of Settlor's lineal descendants and their spouses. (Stip.¶ 35.) The MVM Trust's discretionary beneficiaries were certain lineal

vania in 2007. (Stip.¶¶ 36, 66–67.) NMM Trust made no distributions to the discretionary beneficiaries in 2007. (Stip.¶ 38.) The trustees of the MVM Trust were not required to make any distributions of income or principal during 2007, but did make a distribution of $1,400,000.00 to one of its discretionary beneficiaries. (Stip.¶¶ 68–69.)

As fiduciary of the NMM Trust, WTC reported that the NMM Trust had no taxable income from Pennsylvania sources and had a net Pennsylvania taxable income of zero. (Stip.¶¶ 41–42.) As fiduciary of the MVM Trust, WTC reported that the MVM Trust had taxable income from Pennsylvania sources in the amount of $1,349,817.00; however, no portion of that $1,349,817.00 was, in fact, derived from Pennsylvania sources. (Stip.¶¶ 72–74.) The MVM Trust reported the taxable income because the tax preparation software required it to report taxable income from Pennsylvania sources in order to report the distribution of $1,400,000.00. (Stip.¶ 75.) The MVM Trust claimed a deduction in the amount of $1,349,817.00 with respect to the distribution and reported its net Pennsylvania taxable income of zero. (Stip.¶ 76.)

## II. Procedural History

On June 23, 2009 and May 21, 2010 the Department issued Notices of Assessments for the 2007 Tax Year (TY) in the amounts of $232,164.00 and $276,263.00, including underpayment, interest, and penalties against the NMM Trust and MVM Trust, respectively, based on all of the Trusts' 2007 reported income. (NMM Trust Notice of Assessment, Ex. 6; MVM Trust Notice of Assessment, Ex. 10.) The

Trusts filed Petitions for Reassessment with the Board of Appeals, which denied reassessment. (NMM Board of Appeals Decision, Ex. 7; MVM Board of Appeals Decision, Ex. 11.) The Trusts then appealed to the Board of Finance and Revenue (Board), arguing that they were nonresident trusts with no taxable income, no assets, and no trustees in Pennsylvania. Rather, the Trusts argued that they were Delaware resident trusts administered in Delaware and that the imposition of PIT violates the Due Process and Commerce Clauses of the U.S. Constitution. (Board NMM Op. at 2, Ex. 8; Board MVM Op. at 2, Ex. 12.) In its appeal, the MVM Trust also relied on Department Ruling No. PIT–01–040 (Ruling 01–040), to support its argument that it was a non-resident trust and asserted that, in addition to the Due Process and Commerce Clauses of the U.S. Constitution, imposing the PIT also violated the Uniformity Clause of the Pennsylvania Constitution and the Equal Protection Clause of the U.S. Constitution. (Board MVM Op. at 2, Ex. 12.) In addition to reassessment, the Trusts requested that the Board abate the assessed penalties and interest.

■ The Board did not rule on the Trusts' constitutional claims and held that, pursuant to Sections 301(s) (defining resident trusts) and 302(a) (indicating that all resident trusts are subject to a tax) of the Tax Code [7] and the Department's regulations, the Trusts were resident trusts because Settlor was a Pennsylvania resident when he created the Trusts and, as such, are subject to PIT. (Board NMM Op. at 4–5, Ex. 8; Board MVM Op. at 5–6, Ex. 12.) With regard to Ruling 01–040, the Board

---

descendants of Settlor and their spouses. (Stip.¶ 67.)

7. 72 P.S. §§ 7301(s), 7302(a). Section 301 was added by Section 4 of the Act of August

31, 1971, P.L. 362, *as amended.* Section 302 was added by Section 8 of the Act of August 4, 1991, P.L. 97, *as amended.*

noted that such rulings were not binding on the Department or the Board and that, even if Ruling 01–040 applied, it could only be relied upon for five years, a period that expired on July 27, 2006. The Board did strike the underpayment and estimated underpayment of penalties, but upheld the imposition of interest. (Board NMM Op. at 6, Ex. 8; Board MVM Op. at 6, Ex. 12.) The Trusts petitioned this Court for review, and our Court consolidated the Trusts' appeals.[8]

### III. Taxing Trusts in Pennsylvania

We begin by reviewing the relevant statutory and regulatory provisions that apply to the taxation of trusts in Pennsylvania. Section 302(a) of the Tax Code provides that: "Every resident ... trust shall be subject to, and shall pay for the privilege of receiving ... income ... a tax upon each dollar of income received by that resident during that resident's taxable year ...." 72 P.S. § 7302(a). Section 301(s)(2) defines "resident trust" as including "[a]ny trust created by ... a person who at the time of such creation ... was a resident." 72 P.S. § 7301(s)(2). The Department's regulations explain:

> The single controlling factor in determining if a trust is a resident trust for purposes of this article shall be whether the decedent, the person creating the trust or the person transferring the property was a resident individual or person at the time of death, creation of the trust or the transfer of the property. The residence of the fiduciary and the beneficiaries of the trust shall be immaterial. A resident trust shall be one of the following:
>
> (i) A trust created by the will of an individual who at the time of his death was a resident individual.
>
> (ii) A trust created by a person who at the time of the creation was a resident.

61 Pa.Code § 101.1. Section 305 of the Tax Code,[9] states:

> The income of a beneficiary of [a] ... trust in respect of such ... trust shall consist of that part of the income or gains received by the ... trust for its taxable year ending within or with the beneficiary's taxable year which, under the governing instrument and applicable State law, is required to be distributed currently or is in fact paid or credited to said beneficiary. The income or gains of the ... trust, if any, taxable to such ... trust shall consist of the income or gains received by it which has not been distributed or credited to its beneficiaries.

72 P.S. § 7305. Section 314 of the Tax Code[10] provides, in relevant part, a credit "against the tax otherwise due under this article for the amount of any income tax ... on him ... by another state with respect to income which is also subject to tax under this article," but such credit "shall not exceed the proportion of the tax otherwise due under this article that the amount of the taxpayer's income subject to tax by the other jurisdiction bears to his

---

**8.** "This Court is entitled to the broadest scope of review when considering the propriety of an order of the Board of Finance and Revenue because, although we hear such cases in our appellate jurisdiction, we function essentially as a trial court." *Senex Explosives, Inc. v. Commonwealth*, 58 A.3d 131, 135 n. 3 (Pa. Cmwlth.2012). In reviewing constitutional questions, an appellate court's standard of review is *de novo* and our scope of review is

plenary. *City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Breary)*, 604 Pa. 267, 283 n. 13, 985 A.2d 1259, 1269 n. 13 (2009).

**9.** Section 305 was added by Section 4 of the Act of August 31, 1971, P.L. 362.

**10.** Section 314 was added by Section 4 of the Act of August 31, 1971, P.L. 362.

entire taxable income." 72 P.S. § 7314. With these principles in mind, we turn to the issues presently before this Court.

## IV. Trusts' Challenges to the PIT

### a. Ruling 01–040

■ The Trusts first argue that imposing the PIT on all of the Trusts' income is arbitrary, capricious, and contrary to Ruling 01–040, in which the Department opined that a resident testamentary trust, with no Pennsylvania income or administration, may change its situs to outside Pennsylvania if it obtains an Orphan's Court order approving that change, thereby avoiding the imposition of the PIT. The Trusts assert that the Department should not treat an inter vivos trust whose situs is outside Pennsylvania pursuant to the trust instrument [11] differently than a testamentary trust that changes its situs pursuant to an Orphan's Court order under Ruling 01–040. To do so, according to the Trusts, is arbitrary and capricious.

The Department's regulation at 61 Pa. Code § 3.3 provides that Department rulings, such as Ruling 01–040: may only be relied upon by the taxpayer who requested the ruling, these rulings expire after five years, and are based on the specific factual situations of the request. The Trusts were not parties to Ruling 01–040, Ruling 01–040 expired five months before the 2007 TY, and there are factual differences between these two cases; specifically, Ruling 01–040 was based on the assumption that

none of the testamentary trust's beneficiaries were located in Pennsylvania and the Trusts' discretionary beneficiaries are all located in Pennsylvania. (Ruling 01–040.) Therefore, the Trusts' reliance on Ruling 01–040 is misplaced, and this is not a basis upon which we will reverse the Board's Orders.

■ Having concluded that the non-constitutional issue raised is not a basis upon which we will reverse the Board's Orders, we now turn to the Trusts' assertions that the Department's imposition of the PIT to all of the Trusts' 2007 income violates the Pennsylvania Constitution and/or U.S. Constitution.[12] The Trusts bear a heavy burden of rebutting the presumption that the Tax Code is constitutional "by a clear, palpable, and plain demonstration that the statute violates a constitutional provision." *James v. Southeastern Pennsylvania Transportation Authority,* 505 Pa. 137, 142, 477 A.2d 1302, 1304 (1984). In taxation matters, the burden is particularly heavy because "[w]here an important governmental interest such as collecting revenue exists, private property rights must yield to governmental need." *Bureau of Corporation Taxes v. Marros,* 60 Pa.Cmwlth. 263, 431 A.2d 392, 393 (1981).

### b. U.S. Constitution—The Commerce Clause

■ We first consider whether the Department's imposition of the PIT on all of

---

11. Specifically, the Trusts assert that Section 7708(a) of the Pennsylvania Probate, Estates and Fiduciaries Code (PEF Code), 20 Pa.C.S. § 7708(a), provides, in relevant part, that in both types of trusts, the "provisions of a trust instrument designating the situs of the trust are valid and controlling if: (1) a trustee's principal place of business is located in or a trustee is a resident of a designated jurisdiction; [or] (2) all or part of the trust administration occurs in the designated jurisdiction." *Id.* Accordingly, the Trusts argue that the Trusts' Agreements, which designate Dela-

ware as the Trusts' situs, are valid and controlling because the Trusts' principal place of business and their administration is in Delaware.

12. "It is well settled that when a case raises both constitutional and non-constitutional issues, a court should not reach the constitutional issue if the case can properly be decided on non-constitutional grounds." *Ballou v. State Ethics Commission,* 496 Pa. 127, 129, 436 A.2d 186, 187 (1981).

the Trusts' income violates the Commerce Clause of the U.S. Constitution. Article I, Section 8, Clause 3 of the U.S. Constitution provides: "The Congress shall have Power ... [t]o regulate Commerce ... among the several States." U.S. Const. art. I, § 8, cl. 3. Commerce Clause cases are governed by *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), in which the U.S. Supreme Court established a four prong test to determine whether a state tax withstands constitutional scrutiny. Those four prongs are: (1) the taxpayer must have a substantial nexus to the taxing jurisdiction; (2) the tax must be fairly apportioned; (3) the tax being imposed upon the taxpayer must be fairly related to the benefits being conferred by the taxing jurisdiction; and (4) the tax may not discriminate against interstate commerce. *Id.* at 279, 97 S.Ct. 1076. To pass constitutional muster, *all* four prongs must be satisfied and the failure to meet any one of these requirements renders the tax unconstitutional. *Id.* The Trusts contend that the imposition of the PIT here does not satisfy prongs (1), (2), and (3).

### 1. Substantial Nexus

In *Quill Corporation v. North Dakota,* 504 U.S. 298, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992), the U.S. Supreme Court articulated the standard for establishing the substantial nexus prong of the *Complete Auto* test—physical presence within the taxing state. In *Quill,* North Dakota filed an action to require the Quill Corporation (Quill) to collect and pay a use tax on goods purchased for use in that state.[13] *Id.* at 301, 112 S.Ct. 1904. Quill was an out-of-state mail-order business with no outlets, employees, or tangible property in North Dakota, its products were delivered via common carrier, and its business in North Dakota accounted for only $1 million of Quill's $200 million annual sales nationally. *Id.* at 301–02, 112 S.Ct. 1904. Quill argued that the imposition of the tax violated the Due Process Clause of the Fourteenth Amendment and/or the Commerce Clause by creating an unconstitutional burden on interstate commerce. *Id.* at 301, 303, 112 S.Ct. 1904. The state trial court agreed with Quill, but the North Dakota Supreme Court reversed. *Id.* at 303–04, 112 S.Ct. 1904. Quill appealed to the U.S. Supreme Court, which reversed, in part, finding that the imposition of the use tax violated the Commerce Clause.[14] *Id.* at 318–19, 112 S.Ct. 1904. Noting that the Commerce Clause contains both an affirmative grant of power and a "negative sweep" that " 'by its own force' prohibits certain state actions that interfere with interstate commerce," the U.S. Supreme Court applied the "negative" or "dormant"

---

**13.** The North Dakota "use tax" is a "corollary to its sales tax," is imposed "upon property purchased for storage, use, or consumption with the State," and "every 'retailer maintaining a place of business in' the State [is required] to collect the tax from the consumer and remit it to the State." *Quill,* 504 U.S. at 302, 112 S.Ct. 1904 (quoting N.D. Cent.Code § 57–40.2–07). North Dakota defined retailer "to include 'every person who engages in regular or systematic solicitation of a consumer market in th[e] state' " and " 'regular systematic solicitation' to mean three or more advertisements within a 12–month period." *Id.* at 302–03, 112 S.Ct. 1904 (quoting N.D.

Cent.Code § 57–40.2–01(6) and N.D. Admin. Code § 81–04.1–01–03.1).

**14.** The U.S. Supreme Court did not find a violation of the Due Process Clause, but noted that "while a State may, consistent with the Due Process Clause, have the authority to tax a particular taxpayer, imposition of the tax may nonetheless violate the Commerce Clause" and that the "minimum contacts" standard applied in Due Process Clause cases is not the same as the "substantial nexus" standard applied to inquiries under the Commerce Clause. *Id.* at 305, 312, 112 S.Ct. 1904.

Commerce Clause standard to limit North Dakota's ability to tax Quill where it lacked the necessary physical presence to establish a substantial nexus between Quill and North Dakota. *Quill,* 504 U.S. at 309–19, 112 S.Ct. 1904 (quoting *South Carolina State Highway Department v. Barnwell Brothers, Inc.,* 303 U.S. 177, 185, 58 S.Ct. 510, 82 L.Ed. 734 (1938)).

▮ In considering whether the Trusts are subject to the PIT in regards to all of their income, we are mindful that we are reviewing the presence that the *Trusts,* as the taxpayers, have within Pennsylvania. The Trusts argue that they do not have the required physical presence in Pennsylvania under *Quill.* They assert that the Trusts only presence in Pennsylvania was Settlor's status as a resident in 1959 when he created the Trusts and the residences of the Trusts' discretionary beneficiaries, neither of which provides the necessary substantial nexus with Pennsylvania for the Trusts to be subject to the PIT on all of their income. The Trusts point out that, in creating the Trusts, Settlor retained no continuing control or power of appointment over the Trusts' property and the in-state beneficiaries are discretionary and have no current or future right to the Trusts' income or assets. The Trusts contend that its presence in Pennsylvania is even more attenuated than Quill's presence was in North Dakota.

The Commonwealth of Pennsylvania (Commonwealth), in contrast, maintains that these contacts are sufficient to create the requisite physical presence to establish a substantial nexus between the Trusts and Pennsylvania pursuant to *Quill.* The

Commonwealth asserts that this matter is similar to *Chase Manhattan Bank v. Gavin,* 249 Conn. 172, 733 A.2d 782 (1999), in which the Supreme Court of Connecticut examined the state's taxation of the undistributed income of an inter vivos trust similar to Trusts here, as well as testamentary trusts. All of the trusts were resident trusts based on the residency of the settlor at the time the trusts were created, but all of the trusts' assets were located outside of Connecticut and were administered by out-of-state entities and trustees. *Id.* at 787, 790. Pursuant to the terms of the inter vivos trust, the trust's beneficiary would receive the trust property when she turned forty-eight or it would go to her living descendants if she died before she reached forty-eight. *Id.* at 788. Additionally, the inter vivos trust was required to distribute all of its income to the beneficiary in quarterly installments. *Id.* at 788 n. 8. The Connecticut Supreme Court concluded that the state tax did not violate the Commerce Clause because there was only a "remote and speculative" risk of systematic, multiple taxation or that the taxing scheme would cause discrimination against out-of-state trustees by providing an incentive to choose in-state trustees that would result in a dormant Commerce Clause violation. *Id.* at 805. The Connecticut Supreme Court pointed out that the plaintiff did not assert any particular argument regarding the four requirements set forth in *Complete Auto* and, therefore, it did not address those requirements in rendering its opinion. *Id.*[15]

After reviewing *Quill, Chase Manhattan,* and the relevant statutory and regula-

---

15. The Connecticut Supreme Court also held that the state's taxation of the undistributed income of the inter vivos trust did not violate the Due Process Clause because the sole, non-contingent beneficiary was domiciled in the state, would eventually receive all of the accumulated income, and her rights were protected by Connecticut's laws. *Chase Manhattan,* 733 A.2d at 790, 802–03. Accordingly, the Connecticut Supreme Court concluded that this established the minimum contacts necessary to satisfy the Due Process Clause. *Id.* at 802–03.

tory provisions governing this matter, we agree with the Trusts that they lack the necessary physical presence in Pennsylvania to establish a substantial nexus between the Trusts and Pennsylvania. The Trusts have two contacts with Pennsylvania: 1) the residency of the Trusts' discretionary beneficiaries; and 2) the residency of Settlor in 1959, neither of which, we conclude, establishes the necessary substantial nexus required to meet the first prong of the *Complete Auto* test.

First, we question the Commonwealth's reliance on the discretionary beneficiaries' residences in light of the Department's own regulations, which specifically state that, for residency purposes of a trust, "[t]he residence of . . . the beneficiaries of the trust *shall be immaterial.*" 61 Pa. Code § 101.1 (emphasis added). This Court is unpersuaded by the Commonwealth's assertion that a factor that is considered to be legally immaterial for determining whether a trust is subject to the PIT as a resident trust under Section 302(a) of the Tax Code provides the necessary support for the Commonwealth's position that it can tax the Trusts without violating the Commerce Clause.

More importantly, the beneficiaries' status in Pennsylvania is similar to that of Quill's customers, who resided in North Dakota and whose purchases of Quill's products were the trigger for the tax imposed in *Quill.* In finding the state tax unconstitutional in *Quill,* the U.S. Supreme Court focused on whether the presence of Quill, as the taxpayer, in North Dakota was sufficient, and not on the fact that there were North Dakota citizens participating and benefiting from Quill's sale of products in North Dakota. Our focus here, likewise, must be on whether the Trusts' presence in Pennsylvania is sufficient, and not on the fact that there are discretionary beneficiaries who are Pennsylvania residents and who may, at some time in the future, benefit from the existence of the Trusts.

Finally, the inter vivos trust in *Chase Manhattan* had a single, non-discretionary beneficiary to whom the trust was required to pay any accumulated income in quarterly installments and to whom the trust property would be distributed when the beneficiary turned forty-eight. That trust is distinguishable from this case, where the Trusts' beneficiaries are discretionary, the Trusts have no obligation to pay any distributions to the beneficiaries, and the present beneficiaries have no current or future right to the income or assets of the Trusts. In fact, the Trusts have no obligation to make any distribution until "20 years and 11 months after the death of the last survivor of Nancy and all my lineal descendants living at the time of creation of this trust," (NMM Trust Agreement at 3), or until "20 years and 11 months after the death of the last survivor of all my lineal descendants living at the time of creation of this trust," (MVM Trust Agreement at 3). Additionally, the Connecticut Supreme Court did not address any of the *Complete Auto* factors in making its determination. Therefore, the residency of the discretionary beneficiaries in Pennsylvania does not provide the physical presence of the Trusts necessary to establish a substantial nexus here.

Second, we conclude that Settlor's residency in Pennsylvania when he created the Trusts in 1959 does not provide the physical presence necessary to establish a substantial nexus. Settlor did reside in Pennsylvania when he established the Trusts in 1959; however, he chose to have the Trusts governed by Delaware law, established the administration of the Trusts in Delaware, and did not reserve in himself any continuing control or power of appointment over the Trusts' property.

(NMM Trust Agreement at 11–12; MVM Trust Agreement at 11.) The U.S. Supreme Court, in *Quill*, rejected a "slightest presence" standard to establish a substantial nexus. *Quill*, 504 U.S. at 315 n. 8, 112 S.Ct. 1904 (holding that while Quill's licensing of software to some of its North Dakota clients and its title to "a few floppy diskettes" in the state might create a "minimal nexus" it did not meet the "substantial nexus" requirement of the Commerce Clause) (citations omitted). We hold that to rely on Settlor's residence in Pennsylvania approximately forty-eight years before the TY in question to establish the *Trusts'* physical presence in Pennsylvania in 2007 would be the equivalent of applying the slightest presence standard rejected by the U.S. Supreme Court in *Quill.*

For these reasons, we hold that neither Settlor's residency nor the residency of the beneficiaries provides the Trusts with the requisite presence in Pennsylvania to establish a substantial nexus and, therefore, the first prong of *Complete Auto* is not met and the imposition of the PIT here violates the Commerce Clause of the U.S. Constitution. *Complete Auto*, 430 U.S. at 279, 97 S.Ct. 1076 (requiring all four prongs to be satisfied for a statute to withstand constitutional scrutiny). Although we conclude that the substantial nexus prong of the *Complete Auto* test has not been met and, therefore, the imposition of the PIT on all of the Trusts' income violates the Commerce Clause, *id.*, we will nevertheless address the remaining *Complete Auto* prongs the Trusts challenge.

**2. Fair Apportionment**

■ To satisfy the fair apportionment prong of the *Complete Auto* test, a tax must be both internally and externally consistent. *Goldberg v. Sweet*, 488 U.S. 252, 261–62, 109 S.Ct. 582, 102 L.Ed.2d 607 (1989). To be internally consistent, the tax must be structured so that, if every taxing jurisdiction were to apply the identical tax, the taxpayer would not be subject to double taxation. *Philadelphia Eagles Football Club, Inc. v. City of Philadelphia*, 573 Pa. 189, 225, 823 A.2d 108, 131 (2003). The external consistency test asks whether a state taxed only that "portion of the revenues from the interstate activity which reasonably reflects the intrastate component of the activity being taxed." *Goldberg*, 488 U.S. at 262, 109 S.Ct. 582. External consistency examines the economic justification for the taxing authority's claim upon the value being taxed to determine whether the jurisdiction is taxing economic activity that occurs in other jurisdictions and "there must be a 'rational relationship between the income attributed to the [s]tate and the intrastate values' of the business being taxed." *Philadelphia Eagles*, 573 Pa. at 226, 823 A.2d at 131 (quoting *Hunt–Wesson, Inc. v. Franchise Tax Board of California*, 528 U.S. 458, 464, 120 S.Ct. 1022, 145 L.Ed.2d 974 (2000)) (alteration in original). Our Supreme Court has held that a taxpayer will successfully challenge a tax where the income attributed to the state is either: (1) out of all appropriate proportion to the business transacted by the taxpayer in the state; or (2) inherently arbitrary or produces an unreasonable result. *Id.* at 227, 823 A.2d at 132.

■ The Trusts contend that, given the minimal amount of contacts and presence they have with Pennsylvania, the application of the PIT to all of their income does not satisfy the fair apportionment prong because such application is out of proportion to the Trusts' activities in Pennsylvania. In other words, the Trusts contend that the imposition of the PIT to all of their income results in external inconsistency. The Commonwealth responds, *inter alia*, that the imposition of

the PIT is not out of appropriate proportion to the business the Trusts transact in Pennsylvania and would not be a grossly distorted result because Delaware chooses not to tax the Trusts.

In *Philadelphia Eagles*, the City of Philadelphia attempted to assess a Business Privilege Tax (BPT) against the Philadelphia Eagles Football Club, Inc. (Football Club), which is domiciled in Philadelphia, based on 100% of the Football Club's media receipts. *Philadelphia Eagles*, 573 Pa. at 220–21, 226, 823 A.2d at 128, 131. The Football Club challenged the assessment, asserting, *inter alia*, that imposing the BPT upon all of its media receipts violated the external consistency test by taxing business activity that occurred outside of the taxing jurisdiction. *Id.* at 225, 823 A.2d at 131. After reviewing the case law from the U.S. Supreme Court on external consistency, the Pennsylvania Supreme Court held that the Football Club had shown, by clear and cogent evidence, that the imposition of the BPT on 100% of the media receipts, when the Football Club's games were telecast from venues outside of Philadelphia, "was inherently arbitrary and had no rational relationship to the Football Club's business activity that occurred *in Philadelphia.*" *Id.* at 227, 823 A.2d at 132 (emphasis in original). Our Supreme Court explained that, "[b]y imposing the BPT on 100% of the media receipts when only 50% of the receipts were generated from games played in and broadcast from Philadelphia, the City actually doubled the Football Club's tax assessment on the media receipts," which the Supreme Court held was "plainly 'out of all proportion' to the Football Club's business activities in Philadelphia that generated the payment of media receipts." *Id.* at 227–28, 823 A.2d at 132 (quoting *Hans Rees' Sons, Inc. v. North Carolina*, 283 U.S. 123, 135, 51 S.Ct. 385, 75 L.Ed. 879 (1931)) (emphasis omitted).

The facts here present an even clearer case of external inconsistency than those in *Philadelphia Eagles*. While the Football Club in *Philadelphia Eagles* obtained *some* income from media receipts in the taxing jurisdiction, thereby justifying the assessment of the BPT on a *portion* of the receipts, the City of Philadelphia could not tax the Football Club's *entire* income obtained from all of the receipts without violating the Commerce Clause. Here, the parties stipulated that, for TY 2007, the Trusts did not derive *any* income from Pennsylvania and did not have any assets or interests in Pennsylvania. (Stip.¶¶ 31–33, 39–40, 61–64, 70–71.) They further stipulated that neither WTC nor the general trustees have any presence in Pennsylvania and all of the Trusts' books and records are maintained in Delaware.[16] (Stip.¶¶ 22–30, 34, 58–65.) Notwithstanding the lack of Pennsylvania income, assets, or presence, the Department sought to impose the PIT on *all* of the Trusts' income. We conclude, like the Supreme Court concluded in *Philadelphia Eagles*, that the imposition of the PIT on *all* of the Trusts' income is "plainly 'out of all proportion' to the [Trusts'] business activities in [Pennsylvania] that generated the payment of [the income]." *Philadelphia Eagles*, 573 Pa. at 228, 823 A.2d at 132 (quoting *Hans Rees' Sons, Inc.*, 283 U.S. at 135, 51 S.Ct. 385).

Thus, the imposition of the PIT on the Trusts' income, when all of that income was derived from sources outside of Penn-

---

16. We note that there was one "transaction" that occurred in Pennsylvania in 2007, which was the discretionary distribution the MVM Trust made, (Stip.¶¶ 68–69), on which the dis- cretionary beneficiary would have paid PIT on the distribution she received pursuant to Sections 302 and 305 of the Tax Code, 72 P.S. §§ 7302, 7305.

sylvania, is "inherently arbitrary and ha[s] no rational relationship to the [Trusts'] business activity that occurred in [Pennsylvania]." *Id.* at 227, 823 A.2d at 132. Accordingly, the imposition of the PIT here does not satisfy the fair apportionment prong of *Complete Auto.*

### 3. Fairly Related

■ Taxes are fairly related to the services a state provides where the taxpayer benefits directly or indirectly from the state's protections, opportunities, and services. *Erieview Cartage, Inc. v. Commonwealth,* 654 A.2d 276, 279 (Pa.Cmwlth. 1995). These services include: access to the state's economic markets; the benefits and protections of the state's courts, laws and law enforcement; use of the state's roadways and bridges; and "police and fire protection, the benefit of a trained work force, and 'the advantages of a civilized society.'" *Exxon Corporation v. Wisconsin Department of Revenue,* 447 U.S. 207, 228, 100 S.Ct. 2109, 65 L.Ed.2d 66 (1980) (quoting *Japan Line, Ltd. v. County of Los Angeles,* 441 U.S. 434, 445, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979)). *See also Erieview Cartage,* 654 A.2d at 279; *Transcontinental Gas Pipe Line Corporation v. Commonwealth,* 153 Pa.Cmwlth. 60, 620 A.2d 614, 620 (1993).

■ The Trusts argue that the imposition of the PIT to all of the Trusts' income does not bear a reasonable relationship to the benefits Pennsylvania confers upon the Trusts. The Trusts assert that neither they nor their trustees benefit from any of the services cited in *Exxon Corporation* or *Erieview Cartage* and, consequently, the imposition of the PIT on all of the Trusts' income does not satisfy the fairly related prong of *Complete Auto.* The Commonwealth focuses on the benefits Pennsylvania provided Settlor and refers to the discretionary beneficiaries to support its contention that the imposition of the PIT to all of the Trusts' income does not violate this prong. It states that Pennsylvania provided all of the benefits of a civilized society to Settlor and to the Trusts' discretionary beneficiaries to live, work and exist and that the Trusts exist to pay income to the discretionary beneficiaries, who benefit from Pennsylvania's societal and legal framework.

In *Erieview Cartage,* this Court held that the imposition of the corporate net income tax was fairly related to the services Pennsylvania provided the taxpayer, a trucking company incorporated in Delaware and headquartered in Ohio, but who transported property through Pennsylvania, delivered property in Pennsylvania, and picked up property in Pennsylvania for out-of-state delivery. *Erieview Cartage,* 654 A.2d at 277, 279. This Court concluded that the taxpayer availed itself not only of Pennsylvania's roadways and bridges, but also to its economic market. *Id.* at 279. Similarly, in *Quality Markets, Inc. v. Commonwealth,* 99 Pa.Cmwlth. 537, 514 A.2d 228, 232–33 (1986), we held that the imposition of a corporate net income tax was fairly related to the services the taxpayer, which had eight stores located in the Pennsylvania, received in the form of a trained work force, police, and fire protection.

In 2007, the Trusts had no physical presence in Pennsylvania, none of their income was derived from Pennsylvania sources, none of their assets or interests were located in Pennsylvania, and they were established under and were governed by Delaware law. (Stip. ¶¶ 31–33, 39–40, 61–64, 70–71; NMM Trust Agreement at 11; MVM Trust Agreement at 11.) Hence, unlike the taxpayers in *Erieview Cartage* and *Quality Markets,* the Trusts do not benefit from Pennsylvania's roadways, bridges, police, fire protection, eco-

nomic markets, access to its trained workforce, courts, and laws. We recognize that the Trusts' discretionary beneficiaries almost certainly benefit from Pennsylvania's societal and legal framework because they reside in Pennsylvania; however, they are not the taxpayer in this matter and, importantly, as discretionary beneficiaries, they have no present or future right to distributions from the Trusts. Moreover, pursuant to Sections 302 and 305 the Tax Code, 72 P.S. §§ 7302 and 7305, the beneficiaries will pay PIT on any distributions they do receive from the Trusts, which are fairly related to the benefits they receive from residing in Pennsylvania. Similarly, Settlor, who was deceased in TY 2007, is not the taxpayer in this matter.

Thus, the Department's imposition of the PIT on the Trusts' entire income is not reasonably related to the benefits *Pennsylvania* provides the *Trusts*. Therefore, the Commonwealth's imposition of the PIT here does not satisfy the fairly related prong of *Complete Auto*.

### V. Conclusion

For the foregoing reasons, we conclude that the imposition of the PIT on the Trusts' income for TY 2007 does not satisfy the test set forth by the U.S. Supreme Court in *Complete Auto* and, therefore, violates the Commerce Clause of the U.S. Constitution.[17] Accordingly, we reverse the Board's Orders.

### *ORDER*

**NOW,** May 24, 2013, the Orders of the Board of Finance and Revenue in the above-captioned matter are hereby **REVERSED.** The Chief Clerk is directed to enter judgment in favor of the Petitioners

if exceptions are not filed within 30 days pursuant to Pa. R.A.P. 1571(i).

---

17. Because we conclude that the PIT imposed here violates the Commerce Clause, we need not address whether it also violated the Due Process and Equal Protection Clauses of the U.S. Constitution or the Uniformity Clause of the Pennsylvania Constitution.