# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Craig S. and Christine L. Andrews,   :
                  Petitioners   :
                        :
         v.               :   No. 185 F.R. 2016
                        :   Argued: June 6, 2018
Commonwealth of Pennsylvania,   :
                  Respondent   :
                        :
Commonwealth of Pennsylvania,   :
                  Petitioner   :
                        :
         v.               :   No. 212 F.R. 2016
                        :   Argued: June 6, 2018
Craig S. and Christine L. Andrews,   :
                  Respondents   :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE ELLEN CEISLER, Judge

**OPINION**
**BY JUDGE BROBSON**            **FILED: November 2, 2018**

      This is one of several related matters, challenging the assessment of Pennsylvania personal income tax (PIT) liability on nonresident investors on account of the 2005 foreclosure of a commercial property located in the City of Pittsburgh (Property). We resolved the first round of appeals through en banc opinions and orders issued in 2012, which the Pennsylvania Supreme Court affirmed in *Wirth v. Commonwealth*, 95 A.3d 822 (Pa. 2014), *cert. denied sub nom. Houssels v.*

*Pennsylvania*, 135 S. Ct. 1405 (2015).[1] Petitioners Craig S. and Christine L. Andrews (Taxpayers), residents of the State of California, are among the second round of challengers.[2]

In a decision dated February 24, 2016, the Board of Finance and Revenue (Board) assessed Taxpayers' PIT liability on account of the foreclosure of the Property at $25,578, "plus appropriate interest, less any payments and credits to their account." Both Taxpayers and the Pennsylvania Department of Revenue (Department) challenge aspects of the Board's decision. We affirm.

## I.  BACKGROUND[3]

600 Grant Street Associates Limited Partnership (Partnership), organized under Connecticut law, purchased the Property for $360 million. Of this $360 million purchase price, the Partnership financed $308 million with a Purchase Money Mortgage Note (PMM Note) secured only by the Property. The PMM Note was nonrecourse, meaning that the Partnership and the lender agreed that the lender's only recourse for nonpayment of the obligations under the PMM Note was to pursue foreclosure of the Property. As the name of the Partnership suggests, the Partnership's primary purpose was the ownership and management of the Property.

---

[1] Our lead opinion disposing of those earlier appeals was *Marshall v. Commonwealth*, 41 A.3d 67 (Pa. Cmwlth.) (en banc) (*Marshall I*), *exceptions overruled*, 50 A.3d 287 (Pa. Cmwlth. 2012) (en banc) (*Marshall II*), *aff'd sub nom. Wirth v. Commonwealth*, 95 A.3d 822 (Pa. 2014), *cert. denied sub nom. Houssels v. Pennsylvania*, 135 S. Ct. 1405 (2015).

[2] Others in the second round include Ronald S. Leventhal (Docket Nos. 186, 213 F.R. 2016), John Thompson (Docket Nos. 188, 215 F.R. 2016), and Annette Sharpe (Docket Nos. 187, 214 F.R. 2016).

[3] The background is drawn from the parties' Joint Stipulation of Facts (Stipulation) and accompanying exhibits, which we adopt as our findings of fact in this *de novo* tax appeal. In so doing, we note that the Stipulation is largely consistent with the facts as found by this Court in *Marshall I*.

2

Interest on the PMM Note accrued on a monthly basis at a rate of 14.55%. If the monthly accrued interest exceeded the net operating income of the Partnership, the Partnership was not required to pay the excess (*i.e.*, the amount of monthly accrued interest less monthly net operating income). Instead, the accrued but unpaid excess would be deferred and, thereafter, compounded on an annual basis subject to the same interest rate as the principal amount of the PMM Note. The original maturity date of the PMM Note was November 1, 2001. In 1998, the lender and the Partnership amended the PMM Note to extend the maturity date to January 2, 2005.

Taxpayers purchased a limited partnership interest (¼ unit) in the Partnership on or about December 31, 1984, for $37,223. Their ¼ unit interest amounted to a 0.037820% interest in the Partnership. Taxpayers were passive investors. They never participated in the management of the Partnership or the Property.

Over the years, the Partnership's net income from operations did not keep pace with projections. The Partnership incurred losses from operations for financial accounting, federal income tax, and PIT purposes every year of its existence. For PIT purposes, the Partnership allocated its annual losses from operations to each partner, including Taxpayers. Taxpayers filed Pennsylvania PIT returns for tax years 1985 through 2005, reporting thereon their pass-through share[4]

---

[4] Under Section 306 of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as amended*, added by the Act of August 31, 1971, P.L. 362, 72 P.S. § 7306, partnerships as legal entities are not subject to PIT. Rather, the partners of the partnership pay PIT on their respective shares of the partnership's income or gain. Section 306 of the Code provides:

> Except as provided under section 306.2[ of the Code, added by the Act of July 9, 2013, P.L. 270, 72 P.S. § 7306.2], a partnership as an entity shall not be subject to the tax imposed by this article, but income or gain of a member of a

of the Partnership losses "derived from or in the form of rents, royalties, patents and copyrights," which is one of eight separate classes of income subject to PIT under Section 303 of the Code.[5]  In these tax years, Taxpayers had no offsetting income of the same class.

Because of the Partnership's dismal operations, the Partnership paid less monthly interest on the PMM Note than it had projected.  Under the terms of the PMM Note, this led to a greater amount of accrued but unpaid interest over the years.  According to the comprehensive "Offering Memorandum" shared with investors, the Partnership projected accrued but unpaid interest on the PMM Note at maturity (November 1, 2001, later extended to January 2, 2005) to be approximately $300 million.  It also projected that proceeds upon sale of the Property at maturity would be sufficient to pay off the principal and accrued interest on the PMM Note, with excess funds available to distribute to the partners as a return on their investment.  At the date of foreclosure, the Partnership had an accrued but unpaid interest obligation of approximately $2.32 billion.  The Partnership had used approximately $121,600,000 of this amount to offset its income from operations that would otherwise have been subject to PIT.  Neither the Partnership nor Taxpayers derived any PIT benefit from the remainder.

The lender foreclosed on the Property on June 30, 2005.  By that time, what began as a $308 million Partnership liability on the PMM Note had grown into

---

partnership in respect of said partnership shall be subject to the tax and tax shall be imposed on his share, whether or not distributed, of the income or gain received by the partnership for its taxable year ending within or with the member's taxable year.

[5] Act of March 4, 1971, P.L. 6, *as amended*, added by the Act of August 4, 1991, P.L. 97, 72 P.S. § 7303.  Specifically, Section 303(a)(4) of the Code provides for a class of income encompassing "[n]et gains or income derived from or in the form of rents, royalties, patents and copyrights."

a liability of more than $2.6 billion, of which only $308 million represented principal. Neither the Partnership nor its individual limited partners received any cash or other property as a result of the foreclosure. That same year, the Partnership terminated operations and liquidated. Taxpayers did not recover their capital investment in the Partnership at foreclosure or liquidation. Indeed, Taxpayers did not receive any cash or other property upon liquidation of the Partnership.

The Partnership reported a gain on foreclosure of the Property for tax year 2005 on federal Form 1065 and Pennsylvania Form PA-65 (information return), the overwhelming majority of which is attributable to the full amount of the PMM Note debt obligation (principal plus accrued but unpaid interest) discharged upon foreclosure. The Partnership reported to Taxpayers on Pennsylvania Schedule NRK-1 for tax year 2005 their pass-through share of the Partnership gain, $935,144, in the class of "[n]et gains or income from the disposition of property." Section 303(a)(3) of the Code.[6] It also reported to Taxpayers their pass-through share of the Partnership's operating losses that year as Section 303(a)(4) class income.

---

[6] Section 303(a)(3) of the Code is quite lengthy. The general class description provides:

> Net gains or income from disposition of property. Net gains or net income, less net losses, derived from the sale, exchange or other disposition of property, including real property, tangible personal property, intangible personal property or obligations issued on or after the effective date of this amendatory act by the Commonwealth; any public authority, commission, board or other agency created by the Commonwealth; any political subdivision of the Commonwealth or any public authority created by any such political subdivision; or by the Federal Government as determined in accordance with accepted accounting principles and practices.

In addition to providing this general description of the class, the General Assembly also expressly exempted several specific transactions from the class. *See* 72 P.S. § 7303(a)(3)(iii)-(vii). None of these exceptions, however, apply to the particular type of property disposition in this case.

In a Notice of Assessment dated April 29, 2008, the Department assessed Taxpayers $28,709 in PIT liability, plus penalties and interest of $9,932.03, for a total assessment of $38,641.03 (Assessment). In doing so, the Department determined that Taxpayers had a taxable gain from the foreclosure for PIT purposes in the amount of their pass-through share of the gain reported by the Partnership in its informational filing—$935,144. Taxpayers filed a petition for reassessment with the Department's Board of Appeals (BOA), challenging the Assessment. On August 21, 2015,[7] BOA rejected the majority of Taxpayers' arguments. It, nonetheless, abated the assessed penalties in full and recalculated the amount of gain realized by the Partnership upon disposition of the Property, accounting for annual straight-line depreciation of the Property dating back to the year the Partnership acquired it.[8] Taxpayers' pass-through share of the Partnership's revised gain was $903,286, thereby reducing Taxpayer's principal PIT liability from $28,709 to $27,730. The Department issued a Notice of Reassessment (Reassessment) consistent with BOA's determination.

Taxpayers appealed the Reassessment to the Board. Citing *Wirth*, Taxpayers contended that the tax benefit rule should be applied to exclude from the amount of the gain realized by the Partnership upon foreclosure that amount of prior year operating losses attributable to accrued but unpaid interest deductions for which the Partnership derived no tax benefit. Under Taxpayers' view, this would reduce

---

[7] BOA stayed consideration of Taxpayers' petition pending the Pennsylvania Supreme Court's decision in *Wirth*.

[8] As this Court noted in *Marshall I*, a gain for PIT purposes is recognized "where the amount realized from the disposition of the property exceeds the adjusted basis of the property at the time of disposition." *Marshall I*, 41 A.3d at 81. Further, depreciation, allowed or allowable, is one of the factors that determines the adjusted basis of property at disposition. Depreciation reduces the basis of the property.

6

the amount realized by the Partnership from $2.6 billion to just $429,600,000, reducing the taxable gain for the Partnership from $2,362,812,499 to just $163,914,948. Concomitantly, Taxpayers' PIT liability for their pass-through share of the Partnership's taxable gain would be reduced by approximately 93%.

Taxpayers also challenged BOA's determination that the Partnership was required to reduce its basis in the Property by straight-line depreciation dating back to the year that the Partnership acquired the Property. Section 303(a.2) was added to the Code by section 9 of Act 89 of 2002.[9] Section 34 of Act 89 of 2002 provides that Section 303(a.2) of the Code "shall apply to taxable years beginning after December 31, 2000." Taxpayers argued that this language meant that the minimum straight-line depreciation provision should only be applied for tax years 2001 and thereafter and, therefore, did not mandate a minimum downward basis adjustment for straight-line depreciation in years preceding the 2001 tax year. The Department offered a competing interpretation. In its view, Section 303(a.2) of the Code relates to the calculation of income. In this case, the income in question is the gain on disposition of the Property, which occurred in 2005. Accordingly, because the income event occurred after the effective date of Section 303(a.2), the minimum straight-line depreciation provision applied to calculate the adjusted basis of the Property from inception through foreclosure and, consequently, any gain upon disposition.

Taxpayers also argued that Pennsylvania lacks the authority to impose PIT liability on Taxpayers in this case, because doing so would violate the Commerce Clause of the United States Constitution.[10] Taxpayers also contended

---

[9] Act of June 29, 2002, P.L. 559.

[10] U.S. Const. art. I, § 8, cl. 3 (conferring on Congress power "[t]o regulate Commerce . . . among the several States").

7

that, in reality, they did not experience a taxable gain in 2005 and, therefore, should not have to pay PIT, citing *Commonwealth v. Rigling*, 409 A.2d 936 (Pa. Cmwlth. 1980). Finally, in a conclusory paragraph, Taxpayers cited a litany of state and federal constitutional violations and requested attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988.

The Board granted Taxpayers' request for relief from the Reassessment in part and denied it in part. The Board revised downward the amount of gain realized by the Partnership, agreeing with Taxpayers that the Partnership was not required to reduce its basis in the Property by straight-line depreciation until the 2001 tax year. Consequently, the Board revised downward Taxpayers' pass-through share of the Partnership's gain to $833,158, thereby reducing Taxpayers' principal PIT liability to $25,578. The Board, however, rejected Taxpayers' other challenges to the Reassessment. Taxpayers now appeal the Board's rejection of their tax benefit rule and Commerce Clause arguments, and the Department appeals the Board's interpretation and application of Section 303(a.2) of the Code, relating to straight-line depreciation.[11]

## II. DISCUSSION

### A. Taxpayers' Appeal—Tax Benefit Rule

Taxpayers contend that the Department and this Court should apply the tax benefit rule to exclude from the gain realized by the Partnership in 2005 that

---

[11] Our standard of review in this matter is covered by Rule 1571 of the Pennsylvania Rules of Appellate Procedure. "Appeals taken from the Board of Finance and Revenue are *de novo* in nature, with no record being certified by the board." *Tool Sales & Serv. Co. v. Bd. of Fin. & Revenue*, 637 A.2d 607, 610 (Pa. 1993), *cert. denied sub nom. Tom Mistick & Sons, Inc. v. Pa.*, 513 U.S. 822 (1994). "Although the Court hears these cases under its appellate jurisdiction, the Court functions essentially as a trial court." *Scott Elec. Co. v. Commonwealth*, 692 A.2d 289, 291 (Pa. Cmwlth. 1997), *exceptions dismissed*, 704 A.2d 205 (Pa. Cmwlth. 1998).

portion of the Partnership's reported operating losses from prior years attributable to accrued but unpaid interest expense for which the Partnership and, by extension, the partners, received no tax benefit. Taxpayers' arguments are identical to the arguments that this Court considered and rejected in *Marshall I* and *Marshall II* and that the Pennsylvania Supreme Court considered and rejected in *Wirth*. Moreover, in *Marshall v. Commonwealth of Pennsylvania*, ___ A.3d ___ (Pa. Cmwlth., Nos. 863 F.R. 2015 and 50 F.R. 2016, filed _____) (*Marshall III*), we refused to reconsider our prior rulings, rejecting the argument that *Wirth* adopted the tax benefit rule as a rule of taxation in the Commonwealth and endorsed its use in the manner that Taxpayers urge in this case. For the reasons set forth in those decisions, we again reject the call to adopt and apply the federal common law tax benefit rule to the disposition of the Property in this case.

### B. Taxpayers' Appeal—Commerce Clause

Taxpayers' Commerce Clause argument requires this Court to consider the question of whether, under the Commerce Clause, Pennsylvania may impose PIT on a nonresident limited partner of a foreign limited partnership (in this case Connecticut), the primary purpose of which was to own and manage a commercial property within Pennsylvania for profit, for the limited partner's pass-through share of the limited partnership's gain upon disposition of the real property, where the limited partner has no other connection with the Commonwealth.

The United States Supreme Court has long interpreted the Commerce Clause as encompassing both an affirmative grant of power to Congress to regulate interstate commerce and a negative component, sometimes referred to as the "dormant Commerce Clause," which prohibits states from enacting laws that unduly burden or discriminate against interstate commerce. *See Ok. Tax Comm'n v.*

9

*Jefferson Lines, Inc.*, 514 U.S. 175, 179-84 (1995) (*Jefferson Lines*); *Johnson v. Am. Standard*, 8 A.3d 318, 324 n.5 (Pa. 2010). Taxpayers' arguments on appeal implicate the dormant Commerce Clause. Under a four-prong test adopted by the United States Supreme Court in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274 (1977), a state tax will withstand dormant Commerce Clause scrutiny if "the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the state." *Complete Auto*, 430 U.S. at 279.

Taxpayers' challenge focuses on the first prong of the *Complete Auto* test, advancing several arguments as to why the substantial nexus prong is not satisfied in this case. Citing the United States Supreme Court's decision in *Quill Corp. v. North Dakota*, 504 U.S. 298 (1992), and this Court's decision in *Robert L. McNeil, Jr. Trust ex rel. McNeil v. Commonwealth*, 67 A.3d 185 (Pa. Cmwlth. 2013) (*McNeil Trust*), Taxpayers argue that they lack any physical presence in the Commonwealth and that their only contact with Pennsylvania is their limited partnership investment in the Partnership. They further argue that the Partnership's ownership of the Property cannot be imputed to them for purposes of satisfying the substantial nexus prong, citing *McNeil Trust* and *BIS LP, Inc. v. Director, Division of Taxation*, 25 N.J. Tax 88 (2009), *aff'd*, 26 N.J. Tax 489 (N.J. Super. App. Div. 2011). In furtherance of this particular point, Taxpayers emphasize that limited partners may not be held liable for the debts of the partnership, citing, *inter alia*, *Exton Plaza Associates v. Commonwealth*, 763 A.2d 521 (Pa. Cmwlth. 2000), and Section 8523(a) of the Pennsylvania Revised Uniform Limited Partnership Act

10

(RULPA), 15 Pa. C.S. § 8523(a) (repealed).[12]  Accordingly, Taxpayers contend that while the Partnership may have had a substantial nexus to Pennsylvania during the 2005 tax year, they, as limited partners, did not.

In response, the Department contends that Taxpayers fail to offer any explanation as to how imposition of PIT in this case burdens interstate commerce, such that the dormant Commerce Clause is implicated.  In addition, the Department contends that Taxpayers misstate the first prong of the *Complete Auto* test. According to that prong, the focus is on the nexus of the taxed activity to Pennsylvania, not the nexus of the taxpayer.  The Department contends that the first prong of *Complete Auto* is clearly satisfied in this case:  "It cannot be seriously argued that the disposition of real property located in Pittsburgh, Pennsylvania, which gave rise to the gains upon which the Commonwealth imposed PIT, is not an activity with substantial nexus to the Commonwealth."  (Department Br. at 29.)

We agree with the Department.  First, we fail to see how imposition of the tax in this case involves commerce among the states.  The taxable event here, the disposition of tangible real property, occurred entirely within the confines of Pennsylvania.  It was, without doubt, a purely *intra*state event.  Assuming, however, that a dormant Commerce Clause analysis is appropriate, we have no hesitation in holding that the disposition of the Property has a substantial nexus to Pennsylvania.

---

[12] Section 8523(a) of the RULPA provided:

A limited partner is not liable, solely by reason of being a limited partner, under an order of a court or in any other matter, for a debt, obligation or liability of the limited partnership of any kind or for the acts of any partner, agent or employee of the limited partnership.

The General Assembly repealed the RULPA in 2016, replacing it with the Pennsylvania Uniform Limited Partnership Act of 2016, 15 Pa. C.S. §§ 8611-8695.

In its recent decision in *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080 (2018),[13] the United States Supreme Court opined that "the first prong of the *Complete Auto* test simply asks whether the tax applied to *an activity* with a substantial nexus with the taxing State." *Wayfair*, 138 S. Ct. at 2099 (emphasis added). Again, the activity being taxed here is not Taxpayers' passive ownership of a fractional share of the Partnership; rather, it is the disposition of a commercial property in the City of Pittsburgh through foreclosure. Accordingly, because the PIT here is being applied to an activity (disposition of property) with a substantial, if not exclusive, nexus to Pennsylvania (the Property is located in the Commonwealth), the challenged tax does not offend the Commerce Clause. *See Jefferson Lines*, 514 U.S. at 184 ("It has long been settled that a sale of tangible goods has a sufficient nexus to the State in which the sale is consummated to be treated as a local transaction taxable by that State.").

We also reject Taxpayers' reliance on *BIS* and Pennsylvania law that generally shields limited partners from liability for the debts and obligations of the limited partnership. As the Pennsylvania Supreme Court noted in *Wirth*, *BIS* is not relevant to this case because it "focused exclusively on New Jersey statutory provisions concerning unitary corporations." *Wirth*, 95 A.3d at 839. The inquiry related to whether the taxpayer in *BIS* had a "constitutional presence in New Jersey," such that New Jersey could assess the taxpayer a corporate business tax. *BIS*, 26 N.J. Tax at 492. Here, as noted above, the dormant Commerce Clause inquiry focuses

---

[13] In *Wayfair*, the United States Supreme Court overruled *Quill*, particularly with respect to the physical presence rule on which Taxpayers rely in this appeal. *Wayfair*, 138 S. Ct. at 2099. Accordingly, we reject Taxpayers' contention that the taxpayer must have a physical presence in the taxing state in order to satisfy the first prong of the *Complete Auto* test. Because we relied on the *Quill* physical presence test in *McNeil Trust*, we reject Taxpayers' reliance on that decision as well.

12

on the constitutional presence of the activity being taxed, not the taxpayer. As for laws that shield limited partners from the obligations of the limited partnerships, they provide no support for Taxpayers' position, because, as noted above, the income tax liability here is that of the limited partners individually, and not the Partnership itself. Section 306 of the Code.

For all of these reasons, we hold that because the activity taxed in this case is the disposition of real property within the Commonwealth, the substantial nexus prong of the *Complete Auto* test is satisfied. The PIT levied against Taxpayers in this case, therefore, withstands Taxpayers' dormant Commerce Clause challenge.

## B. The Department's Appeal—Adjusted Basis (Depreciation)

In its appeal, the Department challenges the Board's interpretation and application of the minimum straight-line depreciation provision in Section 303(a.2) of the Code. The Department contends that the provision is unambiguous. The Department's position is that the provision applies when computing *income* for tax years beginning after December 31, 2000. Because the tax year at issue in this case is 2005, the adjusted basis of the Property must be reduced, at a minimum, by straight-line depreciation back to the year the Partnership acquired the Property. Taxpayers respond simply that the minimum depreciation provision does not apply to tax years before 2001. Accordingly, as the Board concluded, imposing mandatory minimum straight-line depreciation for tax years before 2001 would be contrary to the General Assembly's intent. To the extent there is any doubt about the interpretation of the provision, Taxpayers insist that the section should be construed in their favor.

In our recent decision in *Marshall III*, we fully reviewed and analyzed this issue. For the reasons set forth in that decision, we will affirm both the Board's

13

construction of the effective date language in Section 34 of Act 89 of 2002 and its application of the minimum straight-line depreciation provision in this matter.

### III.  CONCLUSION

For the reasons set forth above, we affirm the Board's assessment of Taxpayers' PIT liability in all respects.

_____

P. KEVIN BROBSON, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Craig S. and Christine L. Andrews, | : | |
| Petitioners | : | |
| | : | |
| v. | : | No. 185 F.R. 2016 |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Respondent | : | |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 212 F.R. 2016 |
| | : | |
| Craig S. and Christine L. Andrews, | : | |
| Respondents | : | |

# **O R D E R**


AND NOW, this 2nd day of November, 2018, the order of the Board of Finance and Revenue is AFFIRMED.

Unless exceptions are filed within 30 days pursuant to Pa. R.A.P. 1571(i), this order shall become final.

_____
P. KEVIN BROBSON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Craig S. and Christine L. Andrews,    :
               Petitioners    :
                              :  No. 185 F.R. 2016
          v.          :
                              :
Commonwealth of Pennsylvania,    :
               Respondent    :

Commonwealth of Pennsylvania,    :
               Petitioner    :
                              :  No. 212 F.R. 2016
          v.          :
                              :  Argued:  June 6, 2018
Craig S. and Christine L. Andrews,    :
               Respondents    :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE ELLEN CEISLER, Judge


CONCURRING OPINION
BY JUDGE McCULLOUGH              FILED:  November 2, 2018


       I join in the Majority's affirmance of the Board of Finance and Revenue's application of section 303(a.2) of the Tax Reform Code of 1971[1] concerning minimum straight-line depreciation and rejection of Craig S. and

---

[1] Act of March 4, 1971, P.L. 6, *as amended*, added by the Act of June 29, 2002, P.L. 559, 72 P.S. §7303(a.2).

Christine L. Andrews' (the Andrews) Commerce Clause argument. However, I concur with the Majority's affirmance of the Board's refusal to apply the tax benefit rule to reduce the personal income tax (PIT) liability of the Andrews, for the reasons set forth in my Concurring Opinion in *Marshall v. Commonwealth of Pennsylvania*, ___ A.3d ___ (Pa. Cmwlth., Nos. 863 F.R. 2015 and 50 F.R. 2016, filed November 2, 2018).

_____
PATRICIA A. McCULLOUGH, Judge