The Kimberley Rice Kaestner 1992 Family Trust v. North Carolina Dep't of Revenue, 2015 NCBC 36.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
12 CVS 8740

THE KIMBERLEY RICE KAESTNER 1992
FAMILY TRUST,
          Plaintiff

v.

NORTH CAROLINA DEPARTMENT OF
REVENUE,
          Defendant

)
)
)
)
)
)
)
)
)
)
)

**OPINION AND ORDER ON
MOTIONS FOR SUMMARY
JUDGMENT**

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, comes before the Court, pursuant to Rule 56 of the North Carolina Rules of Civil Procedure ("Rule(s)"), upon Plaintiff The Kimberley Rice Kaestner 1992 Family Trust's ("Plaintiff" or "Trust") Motion for Summary Judgment ("Plaintiff's Motion") and Defendant North Carolina Department of Revenue's ("Defendant") Motion for Summary Judgment ("Defendant's Motion") (together with Plaintiff's Motion, "Motions"). On February 24, 2015, the Court held a hearing on the Motions.

THE COURT, after reviewing the Motions, briefs in support of and in opposition to the Motions, arguments of counsel, and the evidence and other appropriate matters of record, CONCLUDES that Plaintiff's Motion should be GRANTED and Defendant's Motion should be DENIED for the reasons stated herein.

> *Moore & Van Allen PLLC by Thomas D. Myrick, Esq., Neil T. Bloomfield, Esq., and Kara N. Bitar, Esq. for Plaintiff The Kimberley Rice Kaestner 1992 Family Trust.*
>
> *North Carolina Department of Justice by Peggy S. Vincent, Esq. for Defendant North Carolina Department of Revenue.*

McGuire, Judge.

## Procedural History

1.      Plaintiff filed this action on June 30, 2012, seeking a determination that, as it was applied to Plaintiff, North Carolina General Statute § 105-160.2 (hereinafter, references to North Carolina General Statutes will be to "G.S.") violates the Due Process Clause and the Commerce Clause of the United States Constitution and Section 19 of the North Carolina Constitution. Plaintiff seeks a refund of all taxes, penalties, and interest paid by it pursuant to G.S. § 105.160.2 for the tax years 2005 through 2008. In its Complaint, Plaintiff also sought to enjoin Defendant from enforcing any assessments issued pursuant to G.S. § 105-160.2 and from issuing future assessments against Plaintiff based on the same provision.

2.      On February 11, 2013, the Court granted, in part, Defendant's Motion to Dismiss pursuant to Rule 12(b)(6). In its Order on Motion to Dismiss, the Court dismissed Plaintiff's claim for injunctive relief, but denied the Motion to Dismiss as to the constitutional challenges to the statute.

3.      On July 2, 2014, Plaintiff filed its Motion for Summary Judgment. On September 2, 2014, Defendant filed its Motion for Summary Judgment. Both Motions have been fully briefed and, on February 24, 2015, the Court held a hearing on both Motions.

4.      Both Motions seek summary judgment in the parties' respective favors on the constitutionality of G.S. § 105-160.2. Therefore, for the purpose of this Opinion and Order, the Court will address the Motions together.

## Factual Background

5.      A court does not make findings of fact in ruling upon a motion for summary judgment. However, the court may summarize material facts that do not appear to be at issue and which justify the judgment. *Hyde Ins. Agency, Inc. v. Dixie Leasing Corp.*, 26 N.C. App.

138, 142 (1975). There is very little dispute as to any of the facts in this action, and the dispositive facts are undisputed.

6.     In 1992, the Joseph Lee Rice, III Family 1992 Trust ("Family Trust") was created for the benefit of the children of Joseph Lee Rice, III ("Settlor") under a trust agreement between Settlor and the initial trustee, William B. Matteson.[1] In 2005, Matteson resigned as trustee of the Family Trust, and David Bernstein ("Bernstein"), a Connecticut resident and domiciliary, was appointed trustee.[2] Bernstein was the trustee of the Family Trust at all times relevant to this action.

7.     The Family Trust was created in New York and is governed by New York Law.[3] At the time the Family Trust was created, Settlor and the initial trustee were residents and domiciliaries of New York.[4] At the time of its creation, no primary or contingent beneficiary was a resident or domiciliary of North Carolina.[5] In 1997, Kimberley Rice Kaestner ("Kaestner"), a daughter of the Settlor and a primary beneficiary of the Family Trust, relocated to North Carolina.[6]

8.     On December 30, 2002, by operation of the trust agreement, the Family Trust was divided into separate share trusts for each of the Settlor's three children, including Kaestner.[7]  In 2006, Bernstein "physically divided" the share trusts into three trusts.[8] Plaintiff is the separate share trust formed for the benefit of Kaestner.[9] The current beneficiaries of Plaintiff are Kaestner and her three children, all of whom were residents and

---

[1] Bernstein Aff. (July 2, 2014) ¶ 3.
[2] *Id.* ¶ 13.
[3] *Id.* ¶ 4.
[4] *Id.* ¶ 5.
[5] *Id.*
[6] *Id.* ¶¶ 7-8.
[7] *Id.* ¶ 7.
[8] Bernstein Dep. 6.
[9] Bernstein Aff. ¶ 7.

domiciliaries of North Carolina in the tax years at issue.[10] The contingent remainder beneficiaries of Plaintiff are the Settlor's remaining children, the Settlor's spouse, and the Settlor's sister, none of whom are, or were, residents or domiciliaries of North Carolina.[11]

9. The Family Trust, which includes Plaintiff, is an irrevocable *inter vivos* trust.[12] The terms of the Family Trust provided that when Kaestner turned 40 years of age, the Trustee was to distribute the trust assets to Kaestner. Kaestner turned 40 on June 2, 2009. Prior to turning 40, Ms. Kaestner had conversations with her father and Bernstein as to whether she wished to receive the trust assets at her 40th birthday.[13] Kaestner determined she preferred to extend the Trust.[14] Accordingly, in 2009, prior to Kaestner's 40th birthday, Bernstein transferred the assets of the Trust into a new trust, the KER Family Trust. It is undisputed that the transfer of assets occurred after the tax years at issue in this case, and the KER Family Trust is not a party to this action.

10. During the tax years at issue in this case, the assets held by Plaintiff consisted of various financial investments including equities, mutual funds, and investments in partnerships. The custodian of Plaintiff's assets was located in Boston, Massachusetts. Other documents related to the Trust, including ownership documents of some assets of Plaintiff, financial books and records, and legal records, were all kept in New York.[15] Additionally, all tax returns and Trust accountings have been prepared in New York.[16]

11. Under the terms of the Trust, the beneficiaries, including Kaestner, had no absolute right to any of the assets or income of the Plaintiff, as the distributions of assets or

---

[10] *Id.* ¶ 10.
[11] *Id.* ¶ 11.
[12] *Id.* ¶ 12.
[13] Kaestner Dep. 8-10.
[14] Kaestner Dep. 9.
[15] Bernstein Aff. ¶ 14.
[16] *Id.*

income are made at the sole discretion of the trustee, Bernstein.[17] Furthermore, under the terms of the Trust, Bernstein had broad authority to manage the property held by the Trust "as if the absolute owner thereof."[18] During the years in question no distributions were made to a beneficiary in North Carolina.[19]

12.     Notwithstanding the discretionary nature of the Trust and the broad authority granted to the trustee, it is undisputed that two loans were made from the Trust for the benefit of Kaestner or other beneficiaries.  In 2007 or 2008, Plaintiff loaned $250,000.00 directly to Kaestner in order to allow her to pursue an investment in vanilla.[20]  In 2008 or 2009, a loan was made from Plaintiff to a related trust, the Special Asset Trust, to enable the Special Asset Trust to make a capital call on a limited partnership interest that it held.[21] Both loans were made at the lowest interest rate allowable by the Internal Revenue Service and both loans were ultimately repaid.[22]

13.     Bernstein occasionally communicated with Kaestner regarding Plaintiff. Kaestner was provided an accounting of the Trust,[23] and received legal advice regarding the Trust from Bernstein and his firm.[24] Additionally, Bernstein met with Kaestner and her husband in New York to discuss the Trust, whether the Kaestners desired to receive income distributions, and certain investments the Trust held.[25]

14.     During the tax years at issue, 2005 to 2008, Defendant taxed Plaintiff on the income accumulated in the Trust during each year, although no income was distributed to a

---

[17] *Id.* ¶ 16; *see also id.* Ex. A, Art. 1, § 1.2(a).
[18] *Id.* Ex. A., Art. 5, § 5.2(r).
[19] *Id.* ¶ 17.
[20] Bernstein Dep. 48-49.
[21] Bernstein Dep. 47. In 2007, some assets of the Plaintiff were transferred, or decanted, into the newly formed Special Asset Trust. The Special Asset Trust is not the Plaintiff in this action. *Id.* 32.
[22] *Id.* at 47-49, 52.
[23] Bernstein Dep. 60.
[24] *Id.* at 56-57.
[25] *Id.* at 64-73.

North Carolina beneficiary.[26] Plaintiff seeks refunds totaling in excess of $1.3 million, including $79,634.00 paid for the year 2005; $106,637.00 paid for 2006; $1,099,660.00 paid for 2007; and $17,241.00 paid for 2008.[27] Plaintiff's request for a refund was denied on February 11, 2011.[28] Although Plaintiff's Complaint seeks return of penalties paid on these amounts, no penalties were paid to the State of North Carolina after Plaintiff received a complete waiver of these fees.[29]

Discussion

15.    In this lawsuit, Plaintiff challenges the Department's authority to impose income taxes on the Trust during the years 2005–2008 pursuant to G.S. § 105-160.2. For purposes of context, G.S. § 105-160.2 provides, in pertinent part, as follows:

> The tax imposed by this part applies to the taxable income of estates and trusts as determined under the provisions of the Code . . . . The tax is computed on the amount of the taxable income of the estate or trust that is for the benefit of a resident of this State, or for the benefit of a nonresident to the extent that the income (i) is derived from North Carolina sources and is attributable to the ownership of any interest in real or tangible personal property in this State or (ii) is derived from a business, trade, profession, or occupation carried on in this State . . . . The fiduciary responsible for administering the estate or trust shall pay the tax computed under the provisions of this Part.

16.    In actuality, the only part of G.S. § 105-160.2 that is at issue in this action is the clause of the above-quoted language that provides for a trust to pay taxes on income "that is for the benefit of a resident of this State."[30]

17.    Plaintiff alleges that Section 105-160.2 is unconstitutional on its face and as applied under the Due Process and Commerce Clauses of the United States Constitution, and

---

[26] Bernstein Aff. ¶¶ 19, 21.
[27] *Id.* ¶ 22.
[28] *Id.* ¶ 23.
[29] Koonce Aff. ¶¶ 4-5.
[30] Compl. ¶ 2.

a violation of Article I, Section 19 of the North Carolina Constitution.[31] "When a constitutional question is properly presented, it is the duty of the court to ascertain and declare the intent of the framers of the Constitution and to reject any legislative act which is in conflict therewith." *Mitchell v. N. C. Indus. Dev. Fin. Auth.*, 273 N.C. 137, 144 (1968); *see also Williams v. Blue Cross Blue Shield*, 357 N.C. 170, 183 (2003) (noting this duty and striking down a local act as unconstitutional).

18.     "In challenging the constitutionality of a statute, the burden of proof is on the challenger, and the statute must be upheld unless its unconstitutionality clearly, positively, and unmistakably appears beyond a reasonable doubt or it cannot be upheld on any reasonable ground." *Guilford Cnty Bd. of Educ. v. Guilford Cnty Bd. of Elections*, 110 N.C. App. 506, 511 (1993). When questioning the authority in court of the State to exert its taxing power, "only clear and demonstrated usurpation of power will authorize judicial interference with legislative action." *Railway Express Agency, Inc. v. Maxwell*, 199 N.C. 637, 642 (1930) (quoting *Green v. Frazier*, 253 U.S. 233, 239 (1920)). As the Supreme Court of the United States has explained, "[a] state is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society." *Wisconsin v. J. C. Penney Co.*, 311 U.S. 435, 444 (1940).

19.     The parties agree that the dispositive facts necessary for the Court to decide this case are not in dispute. The question for determination is whether Defendant has the authority under the United States and North Carolina Constitutions to tax Plaintiff on the

---

[31] Compl. ¶¶ 40, 47, and 49.

undistributed income of the Trust based solely upon the beneficiaries' residence in this State.[32]

### Due Process Challenge

20.    Plaintiff challenges §105-160.2 under the Due Process Clause of the United States Constitution and the Law of the Land Clause of the North Carolina Constitution. The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. Article I, Section 19 of the Constitution of North Carolina guarantees due process rights by providing that no person shall be "in any manner deprived of his life, liberty, or property, but by the law of the land." The North Carolina Supreme Court has noted that "[t]he term 'law of the land' as used in Article I, Section 19, of the Constitution of North Carolina, is synonymous with 'due process of law' as used in the Fourteenth Amendment to the Federal Constitution." *Rhyne v. K-Mart Corp.*, 358 N.C. 160, 180 (2004). Accordingly, these provisions are, "for all practical purposes, the same under both the State and Federal Constitutions." *Leonard v. Maxwell*, 216 N.C. 89, 93 (1939). Under either constitution, "a State's 'exaction of a tax constitutes a deprivation of property' subject to the safeguards of the Due Process Clause." *Delhaize Am., Inc. v. Lay*, 222 N.C. App. 336, 343 (2012) (quoting *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 36 (1990)). Accordingly, Plaintiff's due process challenge to the statute under the United States and North Carolina Constitutions may be analyzed together.

21.    When a state seeks to impose a tax, the Due Process Clause requires: (1) "some definite link, some minimum connection, between a state and a person, property or transaction it seeks to tax;" and (2) "that the income attributed to the State for tax

---

[32] Def.'s Br. Supp. Mot. Summ. J. 19-20.

purposes . . . be rationally related to values connected with the taxing state." *Quill v. North Dakota*, 504 U.S. 298, 306 (1992). Under the first requirement, courts consider whether a taxed entity's "connections with a State are substantial enough to legitimate the State's exercise of power over" it. *Id.* at 312. Where the taxed entity has no physical presence in a state, the entity must "purposefully avail itself of the benefits of an economic market in the forum state." *Id.* at 307. This requirement ensures that the taxed entity is given "fair warning that *its activity* may subject it to the jurisdiction of a foreign sovereign." *Id.* at 308 (emphasis added). Under the second requirement, courts analyze "whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state." *J. C. Penney Co.*, 311 U.S. at 444.

22.     The focus of the due process inquiry must be on the entity being called upon to pay taxes under G.S. §105-160.2; here, Plaintiff itself.[33] Accordingly, the Court must scrutinize Plaintiff's contacts with, and relationship to, North Carolina, as well as benefits conferred upon it by North Carolina, to determine the State's authority to tax Plaintiff.

23.     Turning to Plaintiff's contacts with the State of North Carolina, nothing in the record indicates, and Defendant does not argue, that Plaintiff maintained any physical presence in North Carolina during the tax years at issue. The undisputed evidence in this matter shows that Plaintiff never held real property located in North Carolina, never owned personal property located in North Carolina, and never invested directly in any North Carolina based investments.[34] The record also indicates that no trust records were kept or

---

[33] The parties do not dispute that the Plaintiff Trust, and not Kimberly Kaestner or her children, is the taxed entity. *See Anderson v. Wilson*, 289 U.S. 20, 27 (1933) (holding "the law has seen fit to deal with this abstraction [a trust] for income tax purposes as a separate existence").

[34] The Court recognizes that, during the tax years at issue, Plaintiff held investments in entities that, in turn, made investments that may have been related to North Carolina, incurring losses of less than $2.50 in the tax years at issue. However, such an indirect connection is not a sufficient contact to satisfy due process standards. *See Residuary Trust A. v. Director*, 27 N.J. Tax 68, 76-77 (2013) (holding

created in North Carolina, or that the trust could be, in any other manner, said to have a physical presence in the State. Moreover, because the trustee's usual place of business where trust records were kept was outside the State, it is clear from the record that Plaintiff's principal place of administration was not North Carolina.[35]

24.     Defendant contends, however, that the situs, or residence, of the trust is irrelevant as many of its assets are "stored in the cloud" and therefore do not exist in tangible form.[36]  However, the Court notes that other courts have treated the situs of intangible assets such as securities as the physical location of the owner or at which the physical certificates are maintained.  *See Safe Deposit & Trust Co. v. Virginia*, 280 U.S. 83, 92 (1929) ("Intangible personal property may acquire a taxable situs where permanently located, employed and protected;" and cases cited therein); *Hanson v. Denckla*, 357 U.S. 235, 247 n. 16 (1958). These items being located, held, and protected outside North Carolina, the Court finds Defendant's position unpersuasive.

25.     Since Plaintiff has no physical presence in the State, the Court must determine whether Plaintiff has "purposefully availed" itself of the benefits, economic and otherwise, and laws of North Carolina.  As noted above, it is the taxed entity that must direct its actions towards the taxing state.  Such actions could include "the keeping of tangible or intangible personality within a state," "the use and sale of property," and incorporation in, or permission to conduct business granted by, a state. *Miller Brothers Co. v. Maryland*, 347 U.S. 340, 345 (1954).  More specific to a trust, the maintenance of offices, the ownership of assets, or the

---

that a trust did not own New Jersey assets simply by investing in an entity that owned New Jersey assets).

[35] *See* G.S. § 36C-1-103 (defining the principal place of administration for a trust); *see also*  G.S. § 36C-2-203(d) (recognizing a distinction between trusts administered inside and outside North Carolina).

[36] *See* Def.'s Br. Supp. Mot. Summ. J. 7-9.

transaction of business in a state might provide sufficient minimum connection to tax the trust. *Hanson*, 357 U.S. at 251.

26. Defendant concedes that the only "connection between the [Plaintiff] Trust and North Carolina in the case at hand is the residence of the beneficiaries."[37] Defendant contends, however, that Kaestner and her three children have "made North Carolina their home, residence and domicile" since 1997 and that "all of the income earned by the Trust in the years at issue was for the benefit of Ms. Kaestner and her three children."[38] Defendant argues that because the beneficiaries had an equitable interest in Plaintiff's assets, and could potentially have received future distributions, the Trust should be taxable in North Carolina based on their residence in the State.[39] The Court finds Defendant's position unpersuasive for two reasons.

27. First, Defendant's position conflates the beneficiaries' contact with North Carolina with that of the Trust. As noted above, trusts and their beneficiaries are separate legal entities. *See Anderson*, 289 U.S. at 27 (recognizing that, for income tax purposes, trusts are a "separate existence"). Accordingly, Plaintiff's contacts with North Carolina are relevant here, but not those of its beneficiaries. Nothing in the record indicates that Plaintiff itself ever engaged in the sort of "purposeful availment" that would subject it to taxation in North Carolina. *See Miller Brothers Co.*, 347 U.S. at 345 (recognizing actions that would constitute sufficient contact to permit taxation by the State of Maryland).

28. Second, Defendant's position ignores the undisputed facts that Kaestner and her children had no control over Plaintiff's assets or ability to generate income from those assets, and had no authority to compel Plaintiff to distribute income earned by the Trust. In

---

[37] *Id.* at 7, 9.
[38] *Id.* at 7.
[39] *Id.* at 9-11.

North Carolina, the beneficiaries of a trust have no legal interest in the trust's current or future income unless and until they are distributed. *Sabine v. Gill*, 229 N.C. 599, 605 (1948) (trust income "is an intangible which belongs to the trust estate and becomes [the beneficiary's] only by distribution"). Accordingly, the Court concludes that even if the beneficiaries' interest in the Trust's income and assets constitutes an "equitable interest," as Defendant contends, such a remote interest does not provide a sufficient nexus between the Trust and the State of North Carolina such that the latter can tax the income of the former.

29.    Defendant also disputes "Plaintiff's unqualified characterization" that the Trustee managed Plaintiff without any consultation with Kaestner.[40] Defendant contends that Kaestner was provided information about the Trust from Bernstein as trustee, received advice concerning the Trust, and even received two loans from the Trust. This contact with the Trustee, Defendant appears to contend, constitutes a contact between Plaintiff and the State and further demonstrates that Kaestner had some input in, and thus some control over, operations of the Trust.

30.    While the record indicates that Kaestner received information concerning the Trust and received one direct loan from the Trust,[41] it remains undisputed that the actual control of Plaintiff remained with the Trustee in his absolute discretion.[42] Moreover, such infrequent contact as reflected in the record,[43] contact driven by the beneficiary and not Plaintiff, cannot, as a matter of law, constitute sufficient contact of Plaintiff with the State such that all of Plaintiff's undistributed income is subject to taxation in North Carolina.

---

[40] Def.'s Br. Opp. Pl.'s Mot. Summ. J. 12.

[41] In addition to the loan to the Special Asset Trust that, Defendant contends, was for Kaestner's benefit. *See supra*, ¶ 12.

[42] *See* Bernstein Aff. ¶ 16 (noting that the Trustee never consulted with the beneficiaries concerning investment decisions, and that Trustee had, at all relevant times, the sole discretion to make all investment decisions).

[43] *See* Bernstein Dep. 81-84 (describing infrequent, "maybe once a year," meetings with the Kaestners).

31.     Under these circumstances, the Court does not believe that the residency of the beneficiaries in North Carolina, standing alone, can be viewed as the Trust's "purposeful" activity in this State. *Safe Deposit & Trust Co.*, 280 U.S. at 91; *Mercantile-Safe Deposit & Trust Co. v. Murphy*, 203 N.E.2d 490 (N.Y. 1964) ("[T]he imposition of a tax in the State in which the beneficiaries of a trust reside, on securities in the possession of the trustee in another State, to the control or possession of which the beneficiaries have no present right, is in violation of the Fourteenth Amendment").[44] Ultimately, Plaintiff has "clearly, positively, and unmistakably" established that it did not have contacts of a sufficient quality or quantity to be subjected to taxes by the State of North Carolina and to satisfy the requirements of due process.

32.     Plaintiff also has established that the tax levied on the Trust fails to satisfy the second requirement of the due process analysis because the income attributed to North Carolina for tax purposes is not rationally related to values connected with North Carolina. *See Quill*, 504 U.S. at 306.  Under this prong, courts must analyze "whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state." *J. C. Penney*, 311 U.S. at 444.  The Supreme Court distilled the analysis even further: "The simple but controlling question is whether the state has given anything for which it can ask return." *Id.*  As discussed above, the undisputed evidence shows that Plaintiff, as a taxed entity distinct from its beneficiaries, has not done anything to seek out the protection, opportunities, and benefits conferred by North Carolina, and North Carolina has not provided anything to the Trust for which it can ask return.

---

[44] To the extent Defendant contends that Kaestner's or her children's activities in North Carolina constitute the Trust's activities, their activities clearly cannot satisfy the minimum contacts required by due process. *Hanson*, 357 U.S. at 255. ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state.")

33.     Defendant does not expressly address this second requirement of the due process analysis.  Instead, Defendant contends that *Quill* did not create a rigid test for determining whether due process standards have been met.  Defendant argues that the relevant inquiry is whether the taxed entity "had minimum contacts with the jurisdiction 'such that maintenance of the suit does not offend traditional notions of fair play and substantial justice'" and whether the taxed entity's contacts with the forum made it reasonable for the jurisdiction to impose the tax.[45]  Even applying these standards, however, the tax levied against Plaintiff does not meet due process requirements.  As discussed above, the entity that is subjected to the taxes still must have sufficient *contacts* with the state that make it fair and reasonable that the state impose the taxes at issue.  Again, the only contact that Plaintiff has with North Carolina is the presence in the State of beneficiaries who hold, at most, only equitable interests in the Trust.  Not only have the beneficiaries not enjoyed any distribution from the Trust, it is undisputed that Kaestner and her children cannot compel distributions, have no right to control the assets held by Plaintiff and have had no influence over the amount of income generated by Plaintiff.  While the presence of Kaestner and her children in North Carolina may provide *some* contact with the State, absent any other contact by Plaintiff, it does not provide the minimum contacts necessary to satisfy the due process requirement of the United States and North Carolina Constitutions.

34.     Defendant relies heavily on two decisions from other states, *McCulloch v. Franchise Tax Board*, 390 P.2d 412 (Cal. 1964), and *Chase Manhattan Bank v. Gavin*, 733 A.2d 782 (Conn. 1999).  In *McCulloch*, a beneficiary residing in California received a terminal distribution in 1951 from a non-resident trust.  The distribution included the trust assets and the income earned and accumulated in the trust during the years 1946-1950.  *Id.* at 415.

---

[45] Def.'s Reply to Pl.'s Resp. 6.

California taxed the beneficiary for the income earned by the trust during the five years prior to the distribution and for which the trust had not paid taxes to California. *Id.* The beneficiary challenged the assessment of the tax on the income earned by the trust on due process grounds. The Supreme Court of California held that the tax met due process requirements because it concluded that the beneficiary's "residence [in California] confers the essential 'minimum connection' necessary for due process of law." *Id.* at 419. The Court reasoned that "the beneficiary's state of residence may properly tax the trust on income which is payable in the future to the beneficiary, although it is actually retained by the trust, since that state renders to the beneficiary that protection incident to his eventual enjoyment of the accumulated income." *Id.*

35. As a preliminary matter, the *McCulloch* case has features which distinguish it from this case. In *McCulloch*, the taxed beneficiary was also a trustee of the trust. While not the basis for its holding, the Court explained that "[n]o possible doubt attaches to California's constitutional power to tax plaintiff as a trustee. His secondary role as trustee reinforces the independent basis of taxing plaintiff as beneficiary." *Id.* at 421. Ms. Kaestner and her children are not trustees of the Trust.

36. In addition, the precise question before the court in *McCulloch* was California's right to tax the beneficiary for the trust's accumulated income upon a distribution, not the direct taxation of the trust itself. *McCulloch*, 390 P.2d. at 414-15, 419, 421. The court stated:

> [T]o hold that California could not levy this tax upon the beneficiary when the trust is distributed to him would expose this state to serious impediments in the collection of its taxes. The purpose of section 18106 of the Revenue and Taxation Code in imposing upon the beneficiary at the time of the trust distribution his personal obligation to pay taxes due, but unpaid, by the trust is to avoid the difficulties which the state might otherwise encounter in attempting to enforce tax collection directly against foreign trustees.

*Id.* at 420. Here, of course, the tax is not being assessed against Kaestner or her children, and is not being collected upon a distribution.

37.     Ultimately, however, this Court simply does not find *McCulloch* persuasive and reaches a different result. The Court concludes that the beneficiary's residence in North Carolina, standing alone, is not a sufficient contact by the Trust with this State to support the imposition of the tax at issue, and that the benefits enjoyed by Ms. Kaestner and her children as residents of North Carolina are not "protection, opportunities, and benefits" conferred upon the Trust. *J.C. Penney*, 311 U.S. at 444.

38.     In *Gavin*, the Supreme Court of Connecticut reached a similar result to *McCulloch*, concluding "just as the state may tax the undistributed income of a trust based on the presence of the trustee in the state because it gives the trustee the protection and benefits of its laws . . . it may tax the same income based on the domicile of the sole non-contingent beneficiary because it gives her the same protections and benefits." *Gavin*, 733 A.2d at 802.[46] Like *McCulloch*, the facts of *Gavin* provide grounds for distinguishing it from this matter. In *Gavin*, the settlor of the trust was also a Connecticut domiciliary when he created the trust and, accordingly, the trust was a Connecticut "resident *inter vivos* trust." *Id.* at 787, 789.[47] In this case, the Settlor of the Trust was a resident of New York, and there is no North Carolina statute making the Kaestner Trust a resident trust of this State.

39.     In reaching its conclusion, the court in *Gavin* also stated that it was "not persuaded that . . . *Safe Deposit & Trust Co. v. Virginia* . . . is still good law" because the holding was based, in part, on the potential that the trust could be subjected to "double

---

[46] In *Gavin*, the Court expressly relied upon *McCulloch* as supporting its holding. *Gavin*, 733 A.2d at 803.

[47] Connecticut General Statute § 12-701(a)(4)(D) provided that a resident *inter vivos* trust is "a trust, or portion of a trust, consisting of the property of (i) a person who was a resident of this state at the time the property was transferred to the trust if the trust was then irrevocable."

taxation," that is, taxation in more than one state. *Id.* at 802. First, *Safe Deposit & Trust Co. v. Virginia* has not been expressly overruled. Second, a close reading of *Safe Deposit & Trust Co. v. Virginia* demonstrates that the Court considered many of the same factors present in this case in reaching its holding. Central to the analysis in *Safe Deposit & Trust Co.*, the Court noted that, as is the case here, the possessor of the legal title to the securities held in trust in that case resided outside of the state imposing the tax on those assets, and the beneficiaries had no "present right to their enjoyment or power to remove them." *Safe Deposit & Trust Co.*, 280 U.S. at 92. Accordingly, the Court does not agree that *Safe Deposit & Trust Co.* is no longer "good law," as characterized by the *Gavin* court, but remains, at a minimum, instructive as to the due process implications of taxing a trust with such bare connections to the taxing State.

40. For the same reasons stated above, the Court concludes that the beneficiary's residence in North Carolina, standing alone, is not a sufficient contact by the Trust with this State to support the imposition of the tax at issue, and declines to follow the reasoning in *Gavin*.

41. Accordingly, the Court concludes that the portion of G.S. § 105-160.2 providing that a trust may be taxed on income "that is for the benefit of a resident of this State" violates the Due Process Clause of the United States Constitution and Article I, Section 19 of the North Carolina Constitution as applied to Plaintiff in this case where the only basis for imposition of the taxes is the beneficiaries' residence in the State of North Carolina.

**Commerce Clause Analysis**

42. Plaintiff also challenges the constitutionality of G.S. § 105-160.2 under the Commerce Clause of the United States Constitution.[48] Contained in Article 1, Section 8, that

---

[48] For a thorough discussion of the distinction between the constitutionality of a tax under the Due Process Clause and the Commerce Clause, *see Quill v. N. Dakota*, 504 U.S. 298 (1992).

clause provides Congress with the authority to "regulate Commerce . . . among the several States."[49] As the Supreme Court of the United States has recognized, that Clause "'by its own force' prohibits certain state actions that interfere with interstate commerce." *Quill v. N. Dakota*, 504 U.S. 298, 309 (1992) (quoting *S. Carolina State Highway Dept. v. Barnwell Bros., Inc.*, 303 U.S. 177, 185 (1938)). This "negative sweep" of the Commerce Clause, or dormant Commerce Clause, has been interpreted to place specific limitations on the ability of states to levy taxes on interstate commerce and activity. *Quill*, 504 U.S. at 309.

43.     In *Complete Auto Transit, Inc. v. Brady*, the Supreme Court articulated the now well-established four prong analysis for determining the constitutionality of a tax under the Commerce Clause. 430 U.S. 274, 279 (1977); *see also Goldberg v. Sweet*, 488 U.S. 252, 259-260 (1989); *Quill*, 504 U.S. at 311.  A state tax withstands scrutiny under the Commerce Clause if: (1) it is applied to an activity with a substantial nexus to the taxing state; (2) it is fairly apportioned so as to tax only the activities connected to the taxing state; (3) it does not discriminate against interstate commerce; and (4) it is fairly related to services provided by the state. "To pass constitutional muster, *all* four prongs must be satisfied and the failure to meet any one of these requirements renders the tax unconstitutional." *McNeil v. Commonwealth of Pa.*, 67 A.3d 185, 192 (Pa. Commw. Ct. 2013) (citing *Complete Auto Transit, Inc.*, 430 U.S. at 279) (emphasis in original). Because the Court, largely for reasons already discussed above, finds that the application of G.S. § 105-160.2 to Plaintiff fails to satisfy the first and fourth prongs of *Complete Auto*, the Court need not address prongs two and three of that test.

44.     The *Complete Auto* test first requires that the activity taxed have a "substantial nexus" to the taxing State. The Supreme Court has explained that, although

---

[49] U.S. Const. art. I, § 8, cl. 3.

similar to the minimum contacts required under a due process analysis, the "substantial nexus" required under the Commerce Clause reflects a concern over the impact of State regulation on the national economy and, therefore, requires more than "minimum contacts" with the taxing State. *Quill v. N. Dakota*, 504 U.S. 298, 312-13 (1992). Additionally, the Supreme Court has specifically noted that an entity "may have the 'minimum contacts' with a taxing State as required by the Due Process Clause, and yet lack the 'substantial nexus' with that State as required by the Commerce Clause." *Id.* at 313.

45.     Here, the Court already has found that the Trust itself, as a separate legal entity from its beneficiaries, lacked sufficient "minimum contacts" with North Carolina to satisfy the Due Process Clause. Similarly, the mere presence of the beneficiaries in North Carolina, while some contact with the State, is not a "substantial nexus" between the Trust and the State of North Carolina. As noted above, all Trust records were compiled and retained outside of North Carolina, all real or personal property held by the Trust was located outside North Carolina, and all income generated by the Trust was generated from investments located outside North Carolina.[50] Accordingly, both the Trust and the income it generated lacked a substantial nexus with this State sufficient to satisfy the *Complete Auto* test.

46.     Additionally, the fourth prong of the *Complete Auto* test requires that the tax imposed be fairly related to services provided by the State. This prong ensures that "a State's tax burden is not placed upon persons who do not benefit from services provided by the State." *Goldberg*, 488 U.S. at 266-67 (1989). For this reason, the focus of this prong is on "the presence and activities *of the taxpayer within the State*." *Id.* at 266 (emphasis added). Here, as noted above, Plaintiff had no presence in North Carolina.[51] Plaintiff engaged in no activity in the State of North Carolina; it did not make investments in North Carolina, it made no

---

[50] *See supra* ¶ 23.
[51] *Id.*

distributions to North Carolina residents, and it did not maintain any records in North Carolina.[52]

47.     On this point, the recent decision of the Commonwealth Court of Pennsylvania in *McNeil v. Commonwealth*, a case factually similar to the present case, is instructive.  In *McNeil*, Pennsylvania "assessed Pennsylvania income Tax and interest on all of the income of two inter vivos trusts which are located in, administered in, and governed by, the law of Delaware and which had no Pennsylvania income or assets" on the basis that the trusts' discretionary beneficiaries and settlor were Pennsylvania residents. 67 A.3d at 187-88.  The trusts had no obligation to pay any distributions to the beneficiaries and the beneficiaries had no current or future right to the income or assets of the trusts. *See id.* at 194. Pennsylvania law classified the trusts as resident trusts based on the residency of the settlor and taxed the trusts on all of their income.  *Id.* at 187, 190. The Court concluded that the tax violated three prongs of the *Complete Auto* test because (a) the residency of the beneficiaries and settlor did not establish a substantial nexus between Pennsylvania and trusts, (b) the tax was not fairly apportioned as the trust had no Pennsylvania income or assets and the trustees had no presence in Pennsylvania, and (c) the tax was not fairly related to services provided by Pennsylvania as the trusts had no physical presence in Pennsylvania, none of their income was derived from Pennsylvania sources, none of their assets or interests were located in Pennsylvania, and they were established under and were governed by Delaware law. *Id.* at 192-97. To be sure, the beneficiaries themselves, as residents of Pennsylvania, received benefits from Pennsylvania; nonetheless, the *McNeil* court made clear that it was the trust that was subject to taxation, not the beneficiaries themselves. *Id.* at 198 (noting the beneficiaries will pay Pennsylvania tax on any distributions they receive from the trusts).

---

[52] *Id.*

Ultimately, the court in *McNeil* recognized that, although the beneficiaries were provided a benefit from the Commonwealth of Pennsylvania, because the plaintiff trusts themselves "d[id] not benefit from Pennsylvania's . . . economic markets, . . . courts, and laws," the fourth prong of *Complete Auto* was not satisfied. *Id.* at 197-98.

48.     Similarly, notwithstanding the absence of the Trust's meaningful contact with or activity in North Carolina, Defendant argues that this prong is satisfied because "North Carolina provides the beneficiaries with a civilized society . . . [and] the environment for the enjoyment of the Trust, whether assets are distributed now or later."[53] However, as noted above, the *Complete Auto* test examines the activities "of the taxpayer" in the taxing State. *Goldberg*, 488 U.S. at 266. Defendant has only taxed Plaintiff, not the beneficiaries or any North Carolina resident. Accordingly, the Court is limited to examining the benefit conferred by the State on Plaintiff as a separate legal entity from the beneficiaries. *See Anderson*, 289 U.S. at 27. Unlike the beneficiaries, Plaintiff does not benefit from any services or legal framework provided by the State of North Carolina. *See McNeil*, 67 A.3d at 197-98. Similarly, the Court concludes that application of G.S. § 105-160.2 to Plaintiff does not satisfy the fourth prong of *Complete Auto*.

49.     Ultimately, because the application of G.S. § 105-106.2 fails to satisfy the first or fourth prongs of the *Complete Auto* test, the Court concludes that the portion of G.S. § 105-160.2 providing that a trust may be taxed on income "that is for the benefit of a resident of this State" violates the Commerce Clause of the United States Constitution and Article I, Section 19 of the North Carolina Constitution as applied to Plaintiff in this case where the only basis for imposition of the taxes is the beneficiaries' residence in the State of North Carolina.

---

[53] Def.'s Br. Supp. Mot. Summ. J. 30.

Conclusion

50.     Although Plaintiff must satisfy a high burden to prove that a State statute is unconstitutional, North Carolina case law has shown that such a burden is not insurmountable. *See McIntyre v. Clarkson*, 254 N.C. 510 (1961) (holding statute at issue constitutionally invalid where challenger showed the statute's unconstitutionality beyond a reasonable doubt). *Accord Board of Managers James Walker Memorial Hospital v. Wilmington*, 237 N.C. 179, 189 (1953); *Rockford-Cohen Group, LLC v. N.C. Dep't of Ins.*, __ N.C. App. __, 749 S.E.2d 469 (2013).

51.     Ultimately, after a thorough review of the record in this action and consideration of the arguments of the parties, the Court concludes that Plaintiff has shown, beyond a reasonable doubt, that the portion of G.S. § 105-160.2 providing that a trust may be taxed on income "that is for the benefit of a resident of this State" is unconstitutional under the Due Process and Commerce Clauses of the United States Constitution and Article 1, Section 19 of the North Carolina Constitution as applied to Plaintiff in this case where the only basis for imposition of the taxes is the beneficiaries' residence in the State of North Carolina. For the reasons stated above, it appears to the Court that Plaintiff's Motion for Summary Judgment should be GRANTED, and Defendant's Motion for Summary Judgment should be DENIED.

THEREFORE, IT IS ORDERED that:

52.     Plaintiff's Motion for Summary Judgment is GRANTED. Defendant shall refund any and all taxes and penalties paid by Plaintiff pursuant to G.S. § 105-160.2, with interest.

53.     Defendant's Motion for Summary Judgment is DENIED.

This the 23rd day of April, 2015.